IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


VERITA JO THOMPSON,

        Plaintiff,

vs.                                  Case No. 12-4039-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On May 20, 2011, administrative law judge (ALJ) Michael D. Shilling issued his decision (R. at 46-57). Plaintiff alleges that she has been disabled since August 22, 2008 (R. at 46). Plaintiff is insured for disability insurance benefits through

December 31, 2009 (R. at 48). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 48). At step two, the ALJ found that plaintiff had the following severe impairments: generalized anxiety disorder, depression and minimal L5-S1 disc disease (R. at 48). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 49). After determining plaintiff's RFC (R. at 50), the ALJ determined at step four that plaintiff is unable to perform her past relevant work (R. at 55). At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 56-57). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 57).

**III. Did the ALJ err in his evaluation of the medical opinion evidence?**

On January 29, 2010, a mental status examination was performed by Dr. Lynn Parsons, a clinical psychologist. Dr. Parsons performed a clinical interview, and reviewed a wide variety of medical records. His diagnostic impression included the following:

> …What does seem definite is that Ms. Thompson experiences symptoms of both depression and anxiety that she relates to physical and psychological sequalae[?] of her accident, that she experiences symptoms

5

of anxiety/psychosis that predate her
accident, and that there is a chronic
pattern of maladjustment that relates to
relationships. It seems uncertain whether
Ms. Thompson will be able to work
sufficiently to be self-supporting. At
best, her lower than average intellectual
capacity will restrict her to unskilled
labor. Unskilled labor tends to be
physically demanding, which is something she
claims to be unable to tolerate. If her
pain problem can be sufficiently relieved,
thus relieving much of her depression as
well, she may be able to return to work in
the future. She is unable to work at
present. Much will depend, however, on how
her psychosis develops and how that will
affect her ability to keep a job.

The ALJ stated the following regarding this consultative evaluation:

> An opinion of whether an individual is
> capable of working is reserved to the
> Commissioner…However, this opinion has been
> considered. This opinion is inconsistent
> with the fact the claimant engages in
> numerous daily activities including care for
> her children and maintaining her household.
> Clearly, she has demonstrated the capability
> of engaging in various work like activities
> on a consistent basis. Therefore, this
> opinion is not given significant weight.

(R. at 55). Previously, in his opinion, the ALJ stated the following regarding plaintiff's daily activities:

> …the claimant testified that she goes out
> drinking…In addition, she generally attends
> all of her health care appointments and
> frequent emergency room visits, alone.
> Furthermore, the claimant talks on the phone
> to others, drives her children to and from
> school and drove from approximately an hour
> to the hearing. These facts clearly

> indicate her anxiety does not limit her
> social contacts to the extent she has
> alleged.
>
> ………………….
>
> The record reflects that the claimant has
> four young children all of who live with her
> on a full time basis. The claimant is the
> sole caregiver for her children. There is
> no indication contained within the record
> that the claimant has not be capable of
> caring for her children. She testified that
> she picks one of them up from school on a
> daily basis. The fact that she can handle
> the emotional demands of caring for four
> children, two of whom are young,
> demonstrates that her anxiety and depression
> are not as limiting as she has alleged.
>
> In addition to caring for her children, the
> claimant has been able to maintain her
> household. She testified that she does
> household chores such as vacuuming and doing
> the dishes. Her house has been described as
> nice and well kept. The claimant also
> testified that she goes shopping. Notably,
> in March of 2011 she told her case worker
> that she was doing well and able to handle
> her household on her own including handling
> her finances (Exhibit 28F). Her ability to
> maintain her household shows her anxiety and
> depression do not prevent her from engaging
> in various daily activities. In addition,
> her ability to maintain her household shows
> she can engage in various physical
> activities, which is inconsistent with her
> allegation of debilitating back pain.

(R. at 53, 54).

On April 6, 2011, Dr. Lassi and Floyd Hooper, LCP, treatment providers for the plaintiff, filled out a medical source statement of plaintiff's ability to do work-related

7

activities (mental). After noting numerous signs and symptoms, they opined that plaintiff had an extreme restriction in one category:

> The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at consistent pace without an unreasonable number and length of rest periods.

(R. at 1043). They also found that plaintiff had marked restrictions in the following six categories:

> Interact appropriately with the public.
>
> Interact appropriately with co-workers.
>
> Respond appropriately to work pressures in a usual work setting.
>
> Respond appropriately to changes in a routine work setting.
>
> The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.
>
> The ability to travel in unfamiliar places or use public transportation.

These treatment providers further opined that plaintiff was moderately limited in 9 other categories (out of a total of 23 categories on the form in which an opinion was rendered) (R. at 1038-1045).

The ALJ stated the following regarding the opinions of these treatment providers:

> The marked limitations are not supported by her activities of daily living including

8

>             going out drinking, going shopping at Wal-
>             Mart, going to her doctor's appointments
>             alone, and caring for her children and her
>             household.  These activities demonstrate the
>             claimant is capable of interacting in a
>             socially appropriate manner on a basic
>             level.  Therefore, these opinions are given
>             only some weight.

(R. at 55).

In discounting the opinions of the above medical sources who either treated or examined plaintiff, the ALJ clearly gave great weight to plaintiff's daily activities and her care of her household and children.  The question is whether the ALJ could reasonably rely on those activities to discount the opinions of these medical sources.

First, according to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity.  20 C.F.R. § 404.1572(c) (2012 at 398).  Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in

9

substantial gainful activity. Krauser v. Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping. The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible. The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work**. As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In other words, evidence of performing general housework does not preclude a finding of disability. In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries. We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery

10

> shopping, and visiting friends. We found
> this to be an unpersuasive reason to deny
> benefits: "**We have repeatedly held...that
> 'the ability to do activities such as light
> housework and visiting with friends provides
> little or no support for the finding that a
> claimant can perform full-time competitive
> work.**'" Id. (quoting Hogg v. Shalala, 45
> F.3d 276, 278 (8th Cir.1995)). Moreover, we
> have reminded the Commissioner
>
>> **that to find a claimant has the
>> residual functional capacity to
>> perform a certain type of work,
>> the claimant must have the ability
>> to perform the requisite acts day
>> in and day out, in the sometimes
>> competitive and stressful
>> conditions in which real people
>> work in the real world...The
>> ability to do light housework with
>> assistance, attend church, or
>> visit with friends on the phone
>> does not qualify as the ability to
>> do substantial gainful activity**.
>
> Thomas v. Sullivan, 876 F.2d 666, 669 (8th
> Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

In the case of Richardson v. Astrue, 858 F. Supp.2d 1162 (D. Colo. March 12, 2012), the court held that the ALJ selectively applied the evidence regarding plaintiff's household activities, socialization with friends, and the fact that she cared for three children. The court noted that the evidence showed that plaintiff's daily activities were limited, and held that limited activities, in themselves, do not establish that one can engage in sedentary or light work. Richardson, 858 F.

11

Supp.2d at 1178-1179.  Further, the fact that a claimant takes care of her children does not necessarily mean that this was demanding physically or emotionally, when there is nothing in the record to support that.  Richardson, 858 F. Supp.2d at 1179; see Martinez v. Astrue, 422 Fed. Appx. 719, 728 (10th Cir. April 26, 2011)(there is nothing in the record to support ALJ finding that providing care for daughter is quite demanding both physically and emotionally).

The ALJ clearly relied on plaintiff's daily activities and care for her children to discount the opinions of treating and examining medical sources.  The ALJ even stated that such activities demonstrate the capability of engaging in various work like activities on a consistent basis (R. at 55).  However, according to the regulations, activities such as household tasks are generally not considered to constitute substantial gainful activity.  Furthermore, as the case law makes clear, the ability to engage in the sporadic performance of daily tasks, or to engage in ordinary life activities, do not establish that a claimant can engage in substantial gainful activity.  The daily activities, as set forth by the ALJ, do not demonstrate that plaintiff is capable of working.

Second, an ALJ cannot use mischaracterization of a claimant's activities of a claimant's activities by selective and misleading evidentiary review to discredit his/her claims of

disabling limitations. Sitsler v. Astrue, 410 Fed. Appx. 112, 117-118 (10th Cir. Jan. 10, 2011). According to the ALJ, plaintiff's daily activities demonstrate a capability of engaging in various work like activities on a consistent basis; the ALJ never mentioned any limitations in plaintiff's daily activities.

However, the ALJ, as in Sitsler, 410 Fed. Appx. at 117, ignored the numerous qualifications and limitations of her daily activities that are contained in the record. Plaintiff testified that she picks up her 7 year old son early from school because she does not like being around other parents (R. at 22-23). A progress note from Pawnee Mental Health also noted that plaintiff was picking up her son early so she can avoid others in the parking lot, and that staff are asking her and her son why mom picks him up early. Plaintiff indicated that she tells them it is for an appointment (R. at 999). The Pawnee Mental Health records also document that plaintiff's daughter was in trouble for truancy at school because plaintiff has her stay home when she needs her to do so (R. at 993, 995).

Plaintiff's children need to remind plaintiff to take care of personal needs and grooming, including taking a shower (R. at 23, 194, 257). Plaintiff's daughter has to tell her mom to get in the tub, and to brush her teeth and hair (R. at 303). Plaintiff indicates that her older daughter helps her bathe and

13

dress herself (R. at 14-15). Her son noted that she wears the same clothes for a couple of days, does not do her hair, forgets bathroom essentials and forgets to brush her teeth (R. at 310). She also needs reminders to take her medicine (R. at 14, 194, 257, 307). Her older children prepare most of the meals (R. at 24, 257, 303, 310). The older children also do much of the housework (R. at 24, 257). Plaintiff may start doing some household tasks, but will not finish it, and her children will then finish the task (R. at 307, 311). The older children also help in taking care of the younger children, including feeding them and getting them dressed (R. at 303, 306, 311).

When plaintiff goes shopping, she takes one of her older children with her; she does not think that she can go by herself (R. at 15). Plaintiff's daughter states that they go shopping with her, noting that she has difficulty pushing the cart and being around people (R. at 304). Plaintiff's son indicated they go early in the morning, sometimes at 6:00 a.m., noting that she has difficulty shopping when in public. He also noted that she does not keep track of what she has already, does not pay attention, gets tired real easily, and has a bad back and therefore has trouble picking up heavy items such as bottled water, jugs, and soda pop (R. at 311). Medical records also indicate that plaintiff avoids public places and goes shopping during slow times of 10:00 p.m. or 6:00 a.m., going with her son

(R. at 915). Plaintiff testified that if there are too many people where she is shopping and she has to stand in line, she will leave (R. at 17).

Her son stated that plaintiff forgets the names of her children and calls them the wrong names, she forgets things that just happened recently, and throws away things that they still need (like dishes or clothes she just bought) (R. at 312). Plaintiff testified that she could not manage without the help of her children (R. at 16). Although the ALJ asserted that there is "no indication contained within the record" that plaintiff is not capable of caring for her children (R. at 54), the statements and testimony of plaintiff and her older children provides clear evidence that her older children have a major role in the care of their mother and younger children.

The ALJ failed to mention any of these limitations. An ALJ cannot use mischaracterizations of a claimant's activities to discredit her claims of disabling limitations or to discount the opinions of treating or examining medical sources. For this reason, this case shall be remanded in order for the ALJ to reexamine plaintiff's credibility after considering the evidence regarding plaintiff's qualifications and limitations in her daily activities, and to reevaluate the medical source evidence from treating and examining sources after considering the qualifications and limitations in her daily activities.

Finally, the ALJ will determine whether this additional evidence will warrant new mental RFC findings.

The record also contains a letter from Dr. Gardner, a treating physician, who opines that plaintiff can do no prolonged standing without an option to walk and/or sit periodically. He indicated that standing longer than 20 minutes at a time without the ability to change would aggravate her symptoms. He stated she should not lift over 30 pounds, she should not engage in stooping or significant bending, and she should not push over 50 pounds (R. at 370). The ALJ gave significant weight to the opinions of Dr. Gardner, but did not include the limitations on stooping or bending, because the ALJ indicated that such limitations are not consistent with the evidence because it showed that plaintiff only has mild degenerative disc disease (R. at 54).

However, a report dated April 11, 2009 (R. at 478-479) from Dr. Peloquin included the following:

> <u>The patient with very mild degenerative changes at L5-S1 with the bulging disk now encroaching at nerve root</u>. This patient has a transitional segmented S1. <u>She has significant pain in the low back</u> with some sciatic-pattern radiculopathy down her left leg. Band of pain across the low back is consistent with facet disease.

(R. at 479, emphasis added). This was again confirmed by Dr. Peloquin on July 15, 2009 (R. at 447). Even the ALJ

16

acknowledged some of this evidence earlier in his decision; however, the ALJ failed to note that Dr. Peloquin found that plaintiff had significant pain in her lower back (R. at 51). The medical evidence establishes that she now has a bulging disk encroaching at the nerve roots, significant pain in her low back, and pain consistent with facet disease. The ALJ failed to acknowledge how this medical evidence is inconsistent with the opinions of Dr. Gardner, including his opinion that plaintiff cannot stoop and bend. Therefore, on remand, the ALJ will need to reevaluate the opinions of Dr. Gardner after taking into account this medical evidence, and make new physical RFC findings, if warranted.

The ALJ also discounted some of Dr. Gardner's opinions because she has not received "consistent" treatment (R. at 54-55). While failure to seek treatment may be probative of severity, the ALJ has a basic duty of inquiry to ask the plaintiff why he/she did not seek treatment, or why it was sporadic. Kratochvil v. Barnhart, 2003 WL 22176084 at *5 (D. Kan. Sept. 17, 2003). Similarly, SSR 96-7p states the following:

> On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for

> this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a **consistent** manner. The explanations provided by the individual may provide insight into the individual's credibility.

SSR 96-7p, 1996 WL 374186 at *7 (emphasis added); cited with approval in Madron v. Astrue, 311 Fed. Appx. 170, 178 (10th Cir. Feb. 11, 2009). The fact than an individual may be unable to afford treatment and may not have access to free or low-cost medical service is a legitimate excuse. Madron, 311 Fed. Appx. at 178; SSR 96-7p, 1995 WL 374186 at *8. At the hearing, the ALJ failed to ask the plaintiff to provide any explanation for her lack of "consistent" treatment. Therefore, on remand, the ALJ shall comply with SSR 96-7p and consider any explanations plaintiff may provide for not receiving "consistent" treatment.

Finally, the ALJ, without explanation, did not include in his RFC findings the opinion of Dr. Gardner that plaintiff should not stand for longer than 20 minutes. Therefore, on

remand, the ALJ will also need to either include Dr. Gardner's limitation on plaintiff's ability to stand, or, in the alternative, provide a reasonable explanation for not including such a limitation.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 24th day of April, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge